O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WORLD MIX ENTERTAINMENT, LTD., a corporation, | Case No. CV 07-02159 DDP (Ex) |
| Plaintiff, | **ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| v. | |
| BONE THUGS HARMONY, INC., a corporation; BONE THUGS N HARMONY RECORDS, INC.; a corporation; ANTHONY CHARLES HENDERSON, an individual; CHARLES CURTIS SCRUGGS, JR., an individual; STEVEN VERDELL HOWSE, an individual; JAIME JOSEPH ADLER, an individual , | [Motion filed on January 2, 2009] |
| Defendants. | |

**I. BACKGROUND**

A. <u>Procedural Background</u>

On April 2, 2007, Plaintiff World Mix Entertainment, Ltd. ("World Mix"), a Japanese corporation, filed an action for breach of a performance contract (the "World Mix Contract") against the three individual members of the musical recording and performance group Bone Thugs-n-Harmony ("Bone Thugs Group"), their "booking

agent" Jamie Adler ("Adler"), Bone Thugs-n-Harmony, Inc., and Bone Thugs-n-Harmony Records, Inc.[1]

The individual members of the Bone Thugs Group are Steven V. Howse (professionally known as "Layzie Bone"), Charles C. Scruggs, Jr. (professionally known as "Wish Bone"), and Anthony C. Henderson (professionally known as "Krayzie Bone"). (Hori Decl. ¶ 2.) All three members failed to appear in the action as defendants and default judgments were entered against them on February 28, 2008 in the amount of $205,510.14. (Mot. 2:13-17.)

In May 2008, Defendant Henderson ("Henderson") filed a motion pursuant to Federal Rule of Civil Procedure 60(b) to set aside the default judgment as to himself. (Mot. 2:18-20.) The motion was granted on June 27, 2008. (Id. at 2:20.) Henderson filed an Answer in which he denied that he was bound by the performance contract with World Mix, and also filed a Cross-Complaint against Adler seeking indemnity. (Mot. 2:21-23.)

World Mix now moves for partial summary judgment against Henderson.

B. Background of the Dispute

World Mix promotes concerts in Japan, and its primary focus is to retain and arrange performances by American acts, especially rap and hip-hop artists. (Hori Decl. ¶ 2.)

In September 2006, World Mix entered into negotiations with Adler for the Bone Thugs Group to perform a concert tour in Japan. (Statement of Uncontroverted Facts ("SUF") ¶ 5.) The parties

---

[1] World Mix concedes it failed to serve a summons or Complaint on the two Bone Thugs corporations, which it now alleges have no connection with this suit. (Mot. 2 n.1.) Defendant Henderson does not contest this issue.

dispute Adler's authority to bind Henderson and the Bone Thugs Group. However, on October 5, 2006, Adler and Shinichiro Hori ("Hori"), President of World Mix, signed a performance contract agreeing that the Bone Thugs Group would perform in Japan on December 8 and 9, 2006 and provide a related "modeling shoot." (SUF ¶ 5; Hori Decl. ¶ 3 Ex. A.) In exchange, the contract provided payment of $60,000 ($25,000 for each show and $10,000 for the modeling shoot), three business class flights and four coach flights, and seven hotel rooms. (SUF ¶ 7; Hori Decl. ¶ 4 Ex. A.) A 50% deposit of $30,000 was to be paid by World Mix to The Adler Booking Agency no later than October 10, 2006, with the remaining $30,000 due before the Bone Thugs Group left the United States for Japan. (SUF ¶ 7; Hori Decl. ¶ 4 Ex. A.)

On October 12, 2006, two days after the requisite date for payment, World Mix wired $25,000 to The Adler Booking Agency, which was $5,000 less than the amount stated on the contract. (SUF ¶ 9; Hori Decl. ¶ 6 Ex. B.) However, Adler sent an e-mail to World Mix on October 23, 2006 confirming the deposit and stating, "This letter states that bone thugs received the deposit for the shows in [J]apan. The deposit was $25,000." (SUF ¶ 10; Hori Decl. Ex. B.)

In the months before the tour dates, World Mix kept in "regular contact" with the Bone Thugs Group through Adler and the group's manager, Steve Lobel ("Lobel"), in order to work out various logistical details. (SUF ¶ 12.) For example, a copy of each band member's passport was forwarded to World Mix, including Henderson's. (SUF ¶ 12; see Hori Decl. Ex. D.)

On December 6, 2006, Adler, Lobel, and band-member Howse showed up at the Los Angeles International Airport. (SUF ¶¶ 13-14;

3

Mot. 5:1-3; Hori Decl. ¶ 11.)  Although Adler, Lobel, and Howse waited until their plane flight had left, Henderson and Scruggs never arrived.  (SUF ¶ 14; Hori Decl. ¶ 11.)  Thereafter, the December concerts in Japan were cancelled, and thousands of advance ticket sales were refunded.  (Id.)

In his declaration, Henderson states that Adler did not have the authority to enter into the contract without Defendant's consent, that he told Adler he would be unable to perform on the scheduled dates, and that he was unaware of the World Mix Contract until this litigation was filed.  (Henderson Decl. ¶ 3, 5; Supp. Resp. to Interrogs. Set One 7:1-5.)

## II.   LEGAL STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  On a motion for summary judgment, all justifiable inferences from the evidence must be drawn in favor of the nonmoving party.  Anderson, 477 U.S. 242, 255 (1986).  However, no genuine issue of fact exists "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The existence of merely a "scintilla of evidence in support of the non-moving party's position is not

4

sufficient." Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995) (citing Anderson, 477 U.S. at 252).

**III. DISCUSSION[2]**

    A.   Agency Relationship

An agency relationship may be either "actual" or "ostensible."[3] Cal. Civ. Code § 2298. If an agent acts within the scope of his actual or ostensible authority, all rights and liabilities that accrue to the agent in transactions will also accrue to the agent's principal. Cal. Civ. Code § 2330; see also Cal. Civ. Code § 2318 ("Every agent has actually such authority as is defined by this Title, unless specifically deprived thereof by his principal, and has even then such authority ostensibly, except as to persons who have actual or constructive notice of the restriction upon his authority.")

    1.   Actual Authority

The parties dispute whether Adler possessed actual authority to bind Henderson to the performance contract. "[A]gency is actual when the agent is really employed by the principal." Cal. Civ. Code § 2299. However, an agency relationship is not created where the agent is an "independent contractor." Although "[t]he right to control _the result_ is inherent in both independent contractor relationships and principal-agency relationships; it is the right

---

[2] The Court has diversity jurisdiction in this case, and the contract dispute between the parties is governed by California law. See Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025, 1031 (9th Cir. 2008).

[3] "Many courts use the terms ostensible agency, apparent agency, apparent authority, and agency by estoppel interchangeably. As a practical matter, there is no distinction among them." Armato v. Baden, 71 Cal. App. 4th 885, 897 n.4 (Cal. Ct. App. 1999) (citation omitted).

to control the means and manner in which the result is achieved that is significant in determining whether a principal-agency relationship exists." <u>Wickham v. Southland Corp.</u>, 168 Cal. App. 3d 49, 59 (Cal. App. 4th Dist. 1985)

The parties dispute whether Adler is an independent contractor or an employee. (Henderson Decl. ¶ 7.) According to Henderson, Adler did not have actual authority to accept offers on his behalf without his authorization and consent. (<u>See</u> Henderson Decl. ¶¶ 5-6.) Adler only had authority to "receive offers on behalf of the Group and present them to the Group." (Henderson Decl. ¶ 7; Opp'n to SUF ¶ 4.) Furthermore, there is evidence that Henderson used ordinary care to convey his instructions regarding the World Mix Contract to Adler. Henderson states that he specifically told Adler that he had a "mandatory" court appearance and could not appear on the dates for the performance in Japan; and Henderson submitted evidence of a court appearance set for December 8, 2006. (Henderson Decl. ¶ 3.)

However, actual authority may also be created if the principal intentionally or, by want of ordinary care, allows the agent to believe that authority is conferred. Cal. Civ. Code § 2316. It is undisputed Adler signed a contract which purports to bind the Bone Thugs Group, of which Henderson is a band-member, and represented to World Mix that the Bone Thugs Group had agreed to the World Mix Contract.[4] (SUF ¶¶ 5-6.)

---

[4] Henderson also does not dispute that the contract's reference to the Bone Thugs Group refers to him and his two band-members.

6

1    Therefore, the Court finds that there is a genuine issue of
material fact as to whether Adler had actual authority to bind
Henderson to the World Mix Contract.

### 2. Apparent or Ostensible Authority

Ostensible authority exists where a principal, "intentionally or by want of ordinary care," causes or permits a third party to believe that the agent possesses authority to act in a certain manner. Cal. Civ. Code §§ 2317, 2300. "Ostensible authority must be based on the acts or declarations of the principal and not solely upon the agent's conduct." Taylor v. Roseville Toyota, Inc., 138 Cal. App. 4th 994, 1005 (Cal. Ct. App. 2006)(citing Kaplan v. Caldwell Banker Residential Affiliates, Inc., 59 Cal. App. 4th 741, 747 (Cal. Ct. App. 1997)). Explicit representations by the principal to the third party, however, are not required to find ostensible authority. C.A.R. Transp. Brokerage Co., Inc. v. Darden Rests., Inc., 213 F.3d 474, 480 (9th Cir. 2000).

> [O]stensible authority may be proven through evidence of the principal transacting business solely through the agent, the principal knowing that the agent holds himself out as clothed with certain authority but remaining silent, the principal's representations to the public in general, and the customs and usages of the particular trade in question.

Id. (internal citations omitted).

The undisputed evidence shows that: 1) Adler signed the World Mix Contract, purportedly on behalf of the Bone Thugs Group, of which Henderson is a member; 2) a copy of Henderson's passport was forwarded to World Mix; 3) World Mix's representatives kept in regular contact with Adler and Lobel to plan logistics during the two months before the scheduled trip; and 4) Adler, Lobel, and band-member Howse showed up at the airport on December 6, 2006, and

waited for Henderson and Scruggs to arrive until after the plane departed, and then left the airport themselves without going to Japan. All of these events suggest that Adler had ostensible authority to bind Henderson to the contract.

On the other hand, only one band-member showed up at the airport to leave for Japan, which is circumstantial evidence of some miscommunication or that Adler did not possess, at least, <u>actual</u> authority to bind the Bone Thugs Group. However, even viewed in the light most favorable to Henderson, no reasonable trier of fact could find that the above series of events was not prompted by Adler's ostensible authority as the Bone Thugs Group's booking agent. Henderson states that Adler was one of several individuals authorized to receive offers from third parties for personal appearances of the Bone Thugs Group, and that he was not aware of the World Mix Contract until this litigation began. (Henderson Decl. ¶ 3, 11.) However, while Henderson himself was aware of Adler's limited authority, he has not presented any evidence raising a genuine dispute of material fact that anyone else had been informed of this limit.[5] A principal cannot escape liability by hiding behind an undisclosed limitation on its agent's authority. See Myers v. Stephens, 233 Cal. App. 2d 104, 115 (Cal. Ct. App. 1965) ("[I]f a principal clothes his agent with [ostensible] authority, a person dealing with the agent, in the absence of any conduct on the part of either principal or agent warranting inquiry, is entitled to rely upon that apparent

---

[5] The term "booking agent" itself, which Henderson has used to describe Adler's role (see Cross-compl. ¶ 28), does not overtly suggest any limits on Adler's agency.

8

authority and is not bound by undisclosed limitations.") Henderson himself never communicated Adler's limited authority to World Mix, and provides no other evidence to support his argument. (Cohen Decl. Ex. B. "Supp. Rog. Responses" 7:22-24.)

Generally, under California law, ostensible authority is for the trier of fact to resolve rather than by an order granting summary judgment. Krieger, 181 F.3d at 1121 (citing Thompson v. Occidental Life Ins. Co., 276 Cal. App. 2d 559, 564 (Cal. Ct. App. 1969)). If the moving party meets its burden to show that there are no genuine issues of material fact, however, the nonmoving party must then present "significant probative evidence to support its claim or defense." Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991) (citing Richards v. Neilsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987)). If the nonmoving party presents evidence that is "merely colorable," a motion for summary judgment may not be defeated. Anderson, 477 U.S. at 249-50.

Again, while Henderson directly denies Adler's <u>actual</u> authority, Henderson fails to present evidence that creates a genuine dispute as to whether Adler possessed <u>ostensible</u> authority. Henderson's rebuttal of actual authority, by itself, is not enough to raise a material question of fact as to ostensible authority. See C.A.R. Transp. Brokerage Co., 213 F.3d at 481 (affidavit by nonmoving party contesting actual authority was not sufficiently probative evidence to defeat a motion for summary judgment based on ostensible authority).

As there is no genuine dispute of material fact, the Court finds that Adler had ostensible authority to bind Henderson to the World Mix Contract.

   B.  Breach of Contract Claim

      1.  Cancellation Clause

The World Mix Contract has a clause stating the following:

> IF PAYMENTS ARE NOT MADE ON TIME CONTRACT WILL BE CANCELLED AND BUYER WILL BE REQUIRED TO PAY 50% OF THE AGREED AMOUNT FOR COMPENSATION . . . .

(Hori Decl. Ex. A.) Henderson argues that this clause excuses him from performance, because World Mix made its payment two days late and the payment was $5,000 less than the amount indicated in the contract. (See SUF ¶ 9; Hori Decl. ¶ 6 Ex. B.)

Accepting a late or insufficient payment is an affirmation of the contract, and the right to rescind the contract for material breach may be waived by this conduct. Leiter v. Eltinge, 246 Cal. App. 2d 306, 317 (Cal. Ct. App. 1966). Adler's later conduct thus treated the contract as "alive and viable." Id. World Mix's payment was confirmed by an e-mail from Adler acknowledging its receipt, where he did not protest the late or insufficient payment. (SUF ¶ 10.) After the purported breach of contract by World Mix, Adler and Lobel also remained in regular contact with World Mix until the scheduled trip. (SUF ¶ 12.) The acceptance of the contract was further ratified by the arrival of Adler, Lobel, and band-member Howse at the airport on December 6, 2006. (See SUF ¶¶ 13-14; Mot. 5:1-3; Hori Decl. ¶ 11.)

As there is no genuine dispute as to whether the contract was affirmed by Adler's conduct, despite any breach by World Mix, the

Court finds that Adler waived the right to assert breach on behalf of Henderson.

          2.    <u>Force Majeure Clause</u>

Henderson argues he is excused from performance by the force majeure clause of the World Mix Contract. The force majeure clause states:

> If Artist shall be unable for any reason outside his control to attend the engagement, Artist shall not be required to perform, in which instance, any moneys paid by Purchaser shall be returned and neither party to this agreement shall be under any further obligation to each other. In the event of civil disorder and the likes of which could result in damage to like or property, Artist in his sole judgment, shall have the right to terminate this agreement without liability.

(Hori Decl. Ex. A ¶ 13.) Generally, a force majeure occurs when "there [is] such an insuperable interference occurring without the parties' intervention as could not have been prevented by exercise of prudence, diligence, and care." (<u>Horsemen's Benevolent & Protective Ass'n v. Valley Racing Ass'n</u>, 4 Cal. App. 4th 1538, 1564-65 (Cal. Ct. App. 1992)(quoting <u>Pacific Vegetable Oil Corp. v. C.S.T., Ltd.</u>, 29 Cal.2d 228, 238 (Cal. 1946)). The clause at issue here similarly states that the causing event must be "outside [Henderson's] control." (Hori Decl. Ex. A ¶ 13.) Henderson argues that he was unable to perform the World Mix Contract because he had been ordered by a California Superior Court to "surrender himself to the Contra Costa County Sheriff in department 52 of this court on December 8, 2006 at 1:30 P.M." (Henderson Decl. Ex. A.) However, the Superior Court order indicates that December 8 had been chosen due to a schedule modification initiated by Henderson. (<u>See</u> Henderson Decl. Ex. A ("The ex parte motion of respondent [Henderson] to modify the order

requiring [Henderson] to surrender himself to the Contra Costa County Sheriff on October 6, 2006 is granted due to the pending birth of his child . . . .").) In other words, the court date in the order was not outside of Henderson's control; rather, it was a direct result of Henderson's control. See <u>Webster v. Southern California First Nat. Bank</u>, 68 Cal. App. 3d 407, 415-16 (Cal. Ct. App. 1977)(finding that a court order obtained by a private litigant did not make performance impossible).

As Henderson has provided the Court with no evidence of events outside his control, there is no genuine issue of material fact. The Court finds that Henderson's performance of the World Mix Contract was not excused.

**IV. CONCLUSION**

For the foregoing reasons, the Court GRANTS the motion for partial summary judgment and finds that Henderson is bound by the World Mix Contract and liable as a matter of law for its breach.

Additionally, as World Mix concedes that it never served the corporations Bone Thugs N Harmony, Inc. and Bone Thugs N Harmony Records, Inc. with a complaint or summons, and that these companies do not have any connection with this suit, the Court DISMISSES them as defendants.

IT IS SO ORDERED.

Dated: March 3, 2009

DEAN D. PREGERSON
United States District Judge

12